H. E. Gerke v. Commissioner. Effie M. Gerke v. Commissioner. H. E. Gerke and Effie M. Gerke, Husband and Wife v. Commissioner.
Gerke v. Commissioner
Docket Nos. 42800-42802.
United States Tax Court
T.C. Memo 1954-30; 1954 Tax Ct. Memo LEXIS 217; 13 T.C.M. (CCH) 434; T.C.M. (RIA) 54136; 3 Oil & Gas Rep. 881; May 6, 1954, Filed *217 1. Held, a sum paid by petitioner to a joint venturer in the acquisition and sale of oil interests was improperly included in petitioner's income. 2. Held, oil interests sold by petitioner were held for sale in ordinary course of business and gain was ordinary income. Sam G. Winstead, Esq., for the petitioners. Frank C. Allen, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax: Docket No.
Year
Deficiency
42800
1947
$2,494.25
42801
1947
2,494.25
42802
1946
184.00
The correctness of the determination for 1946 is uncontested. The only issues for decision relate to the year 1947 and are as follows: 1. Did the Commissioner err in including in petitioners' net income the amount of $4,203.67 which was paid to C. F. Peffley in a transaction involving the acquisition and sale of oil interests? 2. Did the Commissioner err in treating the gain from the sale of certain overriding royalty interests as ordinary income rather than gain from the sale of long-term capital assets? Other adjustments which are either conceded *218 or agreed upon may be reflected in a Rule 50 computation. Findings of Fact Petitioners are husband and wife residing in Fort Worth, Texas. They filed separate community income tax returns for 1947 with the collector of internal revenue for the second district of Texas. H. E. Gerke, hereafter referred to as petitioner, was associated in 1944 and 1945 with C. F. Peffley in buying oil interests for the Shell and Sohio oil companies in Alabama and Mississippi. Petitioner and Peffley had an agreement to share any profits or commissions they made on these transactions. In 1945 and 1946 petitioner returned to Texas where he bought and sold several interests in oil leases. Early in 1947 Peffley furnished certain geological information to petitioner which he had obtained from associates in Oklahoma and discussed the drilling potentialities of the properties, with particular reference to the "Nelson-Flynt" leases covering some 200 acres in Montague County, Texas. The location of these leases "looked like a good looking place to drill a well." Petitioner and Peffley worked out an arrangement between them in January and February of 1947 pursuant to which petitioner was to bear the expenses *219 of the deal in the first instance, recoup them and then share any profits from the deal with Peffley. The Oklahoma associates of Peffley who had furnished the geological information were to be taken care of by "some oil payment or something or other," or "over-ride." Following the agreement between petitioner and Peffley, the Nelson and Flynt leases were acquired by or on behalf of petitioner. During the period February 7, 1947 to September 30, 1947, petitioner drew checks in favor of Peffley in the aggregate amount of $4,203.67, representing payments and advances against Peffley's share in the profits from the Nelson-Flynt leases. On February 18, 1947, petitioner received assignment from Mrs. N. M. Flynt of a 25 1/2-acre lease. On March 6, 1947, petitioner received assignment from Mrs. N. M. Flynt of lease covering 14 1/2 acres, which, together with the 25 1/2 acres acquired on February 18, 1947, made up a total of 40 acres, which is referred to as the Flynt lease. On February 20, 1947, petitioner received an assignment of the Nelson lease, which covered 80 acres. By instrument dated March 3, 1947, petitioner acquired an 80-acre lease from W. S. Barcus, which represented *220 the remaining part of the 120-acre Flynt lease. This lease had been acquired by Barcus from Mrs. Flynt on February 6, 1947. In acquiring the lease from Mrs. Flynt on February 6, 1947, Barcus was acting on behalf of petitioner. On February 25, 1947, petitioner placed the Nelson-Flynt lease with an agent in Dallas, Texas, for sale. On April 16, 1947, petitioner made an assignment of the entire 200 acres covered by the Nelson and Flynt lease to Reese Wingard, out of which assignment petitioner retained 1/8 of 7/8 of all the oil, gas and minerals produced as an overriding royalty interest. The consideration for this assignment was $11,250, a part of which was received on March 24, 1947. By assignment dated August 28, 1947, petitioner assigned to J. R. Wilkins 25 overriding royalty acres for a total consideration of $3,750. By instrument dated September 10, 1947, petitioner assigned overriding royalty acres to J. E. Thompson for a consideration of $15,000. At the end of 1947 petitioner still owned a 1/16 overriding royalty interest in the Nelson-Flynt properties subject to an oil payment of $2,000 payable out of 1/32 of 7/8 of the working interest reserved by Laura Nelson in a *221 lease to L. C. Heydrick. The foregoing sales by petitioner of these various interests in the leases were made to persons who in one way or other knew that petitioner was willing to sell though he himself did not actually solicit the purchasers. He had sold oil interests to one of them before. All of the income reported by petitioner for 1947 resulted from the sale of interests in oil leases. Petitioner acquired the Nelson-Flynt leases for the purpose of resale at a profit and the above sales which he made of interests in the leases were made to customers in the ordinary course of his trade or business. Opinion Both issues before us present questions of facts. On the first, the Commissioner's contention is that the $4,203.67 paid to Peffley by petitioner was in fact paid to purchase Peffley's interest in the leases rather than a splitting of profits from the deal between the two. Peffley is dead and we do not have the benefit of his testimony regarding the arrangement between petitioner and himself. Petitioner testified that he never intended to purchase Peffley's interest; that he and Peffley, in effect, were partners in the deal; that the agreement was to share the profits *222 fifty-fifty and that that was what was done. After consideration of the record as a whole we think a preponderance of the evidence supports the position taken by petitioner. Peffley was at least a joint venturer with him in the transaction and under the agreement was entitled to the $4,203.67 as his share of the profits. This amount should not be taxed to petitioner. Turning to the capital gains issue, the Commissioner's determination imposed upon petitioner the burden of proving that the particular oil interests sold in 1947 were held primarily for investment rather than primarily for sale. . The evidence is not at all convincing that this was the case. Petitioner's testimony was to the effect that the leases in question looked like a good investment and that at the time he went into the deal it was his intention "to retain a part of the interest in these leases as an investment." Which part, he did not specify. At the end of 1947 he still owned a 1/16 overriding royalty interest in the leases, subject to an oil payment. Perhaps that was the interest he intended to retain for investment. It is not in issue here. The *223 other interests in the leases which he obtained on the dates in 1947 disclosed in our findings of fact were sold before the end of 1947 and they are the assets in which we are interested. Petitioner relies on , where it was held that merely disposing of investment assets at intermittent intervals, without more, is not engaging in business even though preliminary effort is necessary to render the assets saleable. In order for the Crawford case to be applicable we would have to find that the oil interests here involved were, at the outset, "investment assets." We do not think such a finding is justified by this record. Petitioner was shown to have been engaged in buying and selling oil interests in previous years, some on a commission basis. The leases with which we are concerned were placed with an agent for sale shortly after their acquisition and were sold, though not through the agent, within a few months. Petitioner had an agreement to split profits from the transaction with Peffley. Consideration of these facts and others of record lead us to conclude that the interests sold by petitioner were not acquired for investment, but *224 for resale. We can not find that petitioners have carried their burden on this issue and, accordingly, approve the Commissioner's determination. Decisions will be entered under Rule 50.